Jones, J.
 

 Counsel for the respondent assign various reasons for reversal of the judgment of the Court of Appeals. It is claimed that the Court of Appeals erroneously assumed jurisdiction in
 
 habeas corpus,
 
 for the purpose of determining the sanity of the inmate; that by assuming jurisdiction and awarding the writ of discharge, it thereby substituted its judgment of the patient’s mental condition for that of the superintendent of the Lima State Hospital; that the Court of Appeals erroneously disregarded the rule requiring the petitioner to prove his sanity by clear and convincing evidence; and that it did not apply the proper test of insanity in cases of this character. It is also claimed that the Court of Appeals erred in discharging the petitioner because there was another action then pending in the court of common pleas of Hamilton county involving the same question and the same parties.
 

 '' Counsel for the respondent contend that, because
 
 *169
 
 of the peculiar legislation in this state applying to the Lima State Hospital, that hospital occupies a class distinguished from other state hospitals, since the former has been especially designated by law as a hospital for treatment of.the criminal insane; and that, for such an institution, legislation peculiar to that class of inmates has been adopted which controls the methods by which one who is acquitted of murder on the ground of insanity must be released. Various cognate statutes in support of this argument are cited. It is particularly argued that the only law governing the custody and method of release of patients from the Lima State Hospital is found in Section 1998, General Code (98 O. L. 236, 240). That section authorizes the superintendent of the Lima State Hospital to discharge an inmate “not under sentence for crime,
 
 who, in his judgment,
 
 is recovered, or who has not recovered, but whose condition has improved to such extent that his discharge will not be detrimental to the public welfare or injurious to him. ’ ’
 

 In their brief counsel for the respondent maintain that the determination of the superintendent of the inmate’s mental condition and of his restoration to sanity is final. They argue- that the language of the statute plainly indicates this. We quote from their brief:
 

 “That it is the judgment of the superintendent Which is to be followed in determining whether or not an inmate is recovered and not the judgment of the Court of Appeals for the county in which the hospital is located,” and that this statute “exclusively vests in the superintendent of such hospital
 
 *170
 
 * * * the power to discharge such an inmate when, and only when, in the judgment of such superintendent, the inmate is recovered.” The claim is broadly made that the power of release under this section of the statute is confined solely to the judgment of the superintendent.
 

 While it may be readily conceded that the superintendent has a discretion in the exercise of his judgment in the release of an inmate, we do not agree that his judgment in that respect is either exclusive or final; nor do we concur in the view that an inmate of such hospital may not apply to a court that has original jurisdiction in
 
 habeas corpus
 
 for his release therefrom. Under the Constitution of this state, the Court of Appeals is given original jurisdiction in
 
 habeas corpus
 
 to determine whether one of its citizens is unlawfully restrained or deprived of his liberty. Surely this power has equal or larger scope than any that may be conferred upon the superintendent by legislative act.
 
 Habeas corpus
 
 supplies a method by which an inmate may have a judicial determination of his sanity or of his unlawful restraint. If unlawfully restrained, he may invoke the authority of a court of competent jurisdiction, by means of that writ, in order to secure his release. No legislation can circumvent or deny this jurisdiction of the court in
 
 habeas corpus,
 
 although -legislation may provide for reasonable facilities for its judicial exercise.
 
 Addis
 
 v.
 
 Applegate,
 
 171 Iowa, 150, 154 N. W., 168, Ann. Cas., 1917E, 332;
 
 In re Webers,
 
 275 Mo., 677, 205 S. W., 620.
 

 That the liberties of its citizens might be safeguarded, this state, like many others, has adopted this constitutional provision:
 

 
 *171
 
 “The privilege of the writ of
 
 habeas corpus
 
 shall not be suspended, unless, in cases of rebellion or invasion, the public safety require it. ’ ’ Article I, Section 8.
 

 The petitioner had not only the constitutional right of appeal to the court, in case of his unlawful restraint, but he has also been given that right by virtue of Section 12161, General Code. This section provides: ■
 

 “A person unlawfully restrained of his liberty * * * may prosecute a writ of
 
 habeas
 
 corpus, to inquire into the cause of such imprisonment, restraint, or deprivation.” ¡
 

 Were we to hold that the judgment of the superintendent of the Lima State Hospital upon the question of the inmate’s sanity, or upon the lawfulness of his restraint, Was final and exclusive, we would thereby deprive him of the right to appeal to a judicial tribunal for the determination of such question — a right guaranteed him by our Constitution and law. It would be an anomaly in our jurisprudence were we to hold that a judicial tribunal, upon which original jurisdiction in
 
 habeas corpus
 
 has been conferred by our Constitution and laws, was powerless to determine the sanity' or insanity of an inmate of an institution for the insane, and to release him if he was in fact sane or had been restored to reason since his legal confinement, or to hold that such courts were prevented from deeréeing his liberation because the judgment of the superintendent conflicted with the judgment of a court empowered to use its processes and to hear sworn testimony upon that vital issue.
 

 In ease qn inmate has been acquitted- by the ver
 
 *172
 
 diet of a jury of murder on the ground of insanity,the verdict is
 
 prima facie
 
 evidence of his insanity, and is so made by statute. Section 13612, General Code. In such case the presumption of his insanity continues; and to obtain his release the burden of proving his sanity thereafter is upon the prisoner or inmate of the institution; but, in the last analysis, it is the court, upon application to it, and not the superintendent, who must apply the rule and quantum of evidence in order to establish the sanity of the inmate. Conceding this to be true, counsel for respondent contend that the petitioner was required to prove his sanity, by clear and convincing evidence, at the time of hearing his application in the Court of Appeals; and in that connection it is urged that that court disregarded this rule of evidence when it discharged the petitioner. There has been no case cited to this court which holds that that quantum of proof is required. In the case of Harry K. Thaw, who was acquitted on the ground of insanity, and who later applied for successive writs of habeas corpus, the judges.of the
 
 nisi prius
 
 courts of New York held that an inmate under such circumstances should remain in the institution until such time as it should be
 
 reasonably certain
 
 that the public peace would not be menaced.
 
 People, ex rel. Peabody,
 
 v.
 
 Baker,
 
 59 Misc. Rep., 359, 110 N. Y. S., 848, 852,
 
 People, ex rel. Thaw,
 
 v.
 
 Lamb
 
 (Sup. Ct.), 118 N. Y. S., 339.
 

 The majority of the court are of opinion that the Court of Appeals had ample jurisdiction to hear and determine the sanity of the petitioner and the unlawfulness of his detention, and that the judgment of the superintendent as to petitioner’s sanity did not fore
 
 *173
 
 close him from appealing to the courts for this writ.
 

 Counsel for respondent also contend that the question of the petitioner’s sanity or insanity is now pending between the same parties on a proceeding in error to the court of common pleas of Hamilton county, from a judgment of the probate court of that county committing the petitioner to the Lima State Hospital pursuant to the verdict under Section 13612, General Code. If the case in the common pleas court can be considered as pending, it was not one instituted by the petitioner, but was lodged in the probate court by virtue of the statute requiring the clerk of the criminal court to certify the verdict to the probate court. However, the case in the Court of Appeals was not necessarily the same as that before the probate court. The question in the probate court (although counsel for petitioner claim there was none such) is, and must have been, whether the prisoner in December, 1927, was then sane; the issue before the Court of Appeals when it heard and entered its decree in March, 1928, was whether at that time the prisoner was sane or had been restored to sanity. While the presumption of his insanity in December may have continued, it did not necessarily follow except by way of presumption, that the inmate was also insane three months later when the Court of Appeals entered its decree; at least this-was a question of fact to be determined by the Court of Appeals under the proper rules of evidence. A pending case could have no more vitality than an adjudicated case as a bar against future applications for the writ of
 
 habeas corpus;
 
 and an adjudication of an inmate’s previous mental condition is no ad
 
 *174
 
 judication of his condition at a later period. It is established by overwhelming authority in this country, and elsewhere, that a previous adjudication of an inmate’s mental condition constitutes no bar to another and later application for release from custody by way of
 
 habeas corpus
 
 upon claim and proof of sanity at the time of his later application.
 
 People
 
 v.
 
 Brady,
 
 56 N. Y., 182;
 
 People, ex rel. Maglori,
 
 v.
 
 Siman,
 
 284 Ill., 28, 30, 119 N. E., 940;
 
 Coston
 
 v.
 
 Coston,
 
 25 Md., 500, 506;
 
 In re Snell,
 
 31 Minn., 110, 16 N. W., 692;
 
 People
 
 v.
 
 Lamb, supra.
 
 The principle enunciated in those cases has been carried into our statute. Section 1976, General Code, which seems general in its application, provides that all persons confined as insane shall be entitled to the benefit of the writ of
 
 habeas corpus,
 
 that the question of insanity must be decided at the hearing, and that a judge’s previous decision of insanity “shall be no bar to the issuing of the writ a second time, if it is alleged that such person has been restored to reason. ’ ’
 

 The decisive question in this case was one of fact rather than of law. The real issue was whether under the evidence Remus was sane or insane. Without deciding what quantum of proof was necessary to prove his sanity, the majority of the Court of Appeals found “that the evidence establishes his sanity now, beyond all reasonable doubt,” and that “the proof is clear and convincing.” The evidence adduced at the trial consisted of a large mass of exhibits and several thousand pages of typewritten testimony. The judges of the Court of Appeals had the advantage, which we do not have, of seeing
 
 *175
 
 and hearing the witnesses. They say in their opinion that “it is especially noteworthy that 22 of the 25 experienced persons who there testified or certified concerning the mentality of Remus stated positively that in their opinion he is sane.” After reciting the fact that the members of the court gave to the conduct of the petitioner, both while he was testifying and while he was not testifying, the most careful observation and scrutiny, the majority of the court then state in their opinion:
 

 ‘1
 
 The fullest consideration has been, given to all the evidence and to the conduct of the petitioner throughout the trial; all the circumstances, conflicts and harmonies have been regarded to the uttermost limits; and upon the only question now before the court, namely, the sanity of the petitioner at the time of the trial in this court, a majority of the court are clearly convinced, and therefore find, that petitioner, Remus, is sane, which finding entitles him to be released from Lima State Hospital, which, as we have pointed out, and now again emphasize, is solely for the insane. We do not decide what quantum of proof the petitioner was required to furnish, of his present .sanity, whether a preponderance, or whether it must have been clear and convincing, because, as we have said, the proof is clear and convincing. Indeed, the evidence establishes his sanity now, beyond all reasonable doubt. ’ ’
 

 For this court t.o say now, especially in view of the fact that the trial court had not only Remus but many of the expert witnesses before it, that the judgment of the majority of the Court of Appeals, on a question of fact, purely, was wrong, would be
 
 *176
 
 to substitute the judgment of this court for that of the trial court. The judgment of the Court of Appeals of Allen county is affirmed.
 

 Judgment affirmed.
 

 Kinkade, Robinson and Matthias, JJ., concur.
 

 Marshall, C. J., Day and Allen, JJ., dissent.