Bell, J.,
 

 dissenting. At the outset it should be observed that it would be difficult to disagree with the first three paragraphs of the syllabus. The difficulty is that they are not pertinent to the question before the court. In the instant case there is no claim' that the Probate Court does not possess plenary and exclusive original jurisdiction to appoint or remove a
 
 *95
 
 guardian, or tliat such a proceeding is not one
 
 in rein,
 
 or that an order appointing a guardian can be impeached collaterally.
 

 The question presented is whether a person who has been adjudged an incompetent by the Probate Court and thereafter a guardian of her person and estate has been appointed may prosecute, if and when such incompetency no longer exists, an action in the Court of Common Pleas for a writ of
 
 habeas corpus
 
 to inquire into the cause of such restraint.
 

 The facts, briefly stated, are as follows:
 

 On September 2, 1943, the Probate Court of Stark county issued letters of guardianship to J. J. McCall, appointing him guardian of the person and estate of one Maude Clendenning (appellee here) after entry of a decree finding that she was an incompetent person. Upon appeal on questions of law that judgment was affirmed by the Court of Appeals.
 

 Thereafter, Maude Clendenning, filed an application for a writ of
 
 habeas corpus
 
 in the Court of Common Pleas of Stark county. The writ was issued, the guardian made due return, and after a full and complete hearing the court, on March 13, 1944, entered a judgment which insofar as pertinent here reads as follows:
 

 “* * * and thereupon the proofs and allegations of the parties being heard and considered, the court finds, upon being duly advised in the premises, that Maude Clendenning is no.longer an incompetent person by reason of mental disability and that she is now mentally competent to take care of her. person and her property and that the cause for a guardian over her person and property does not now exist, nor for any further unlawful restraint upon her liberty.
 

 “It is further ordered and adjudged that the writ will therefore be sustained and the said Maude Cien
 
 *96
 
 denning- is discharged from any illegal restraint at the hands of the guardian. Exceptions to the guardian. ’ ’
 

 Upon appeal by the guardian the Court of Appeals affirmed the judgment.
 

 The correctness of the judgment of affirmance is here for review.
 

 There can be little doubt that from and after the appointment of a guardian for the person and estate of Maude Clendenning she was deprived of her liberty as to her estate — she was no longer competent to enter into any contract or to in anywise handle her own affairs — as to her person she was subject to the orders of her guardian. So long as she remained an. incompetent person such restraint was not illegal; on the other hand if and when such incompetency was removed the restraint became illegal.
 

 The holdings in the
 
 Justes
 
 and
 
 Fetter cases,
 
 cited in the majority opinion, are inapplicable. There is no factual similarity between the instant case and either of those cases.
 

 In the
 
 Justes case
 
 an attempt was made to interrupt the progress of a criminal trial by the filing of a petition for a writ of
 
 habeas corpus
 
 in this court. Upon the face of that petition it was evident that the petitioner was not unlawfully restrained of his liberty. Therefore the writ was denied.
 

 In the
 
 Fetter case
 
 it was adjudged by the Juvenile Court of Marion county that Howard Fetter, a nine-year old child, was incorrigible and a delinquent ‘ ‘ and therefore comes into the custody of the court, and will continue for all necessary purposes of discipline and protection, a ward of the court, until he shall attain the age of twenty-one years.”
 

 Thereafter Howard Fetter, upon a warrant issued for that purpose, was delivered to the Children’s Home
 
 *97
 
 of Marion county “to be there received, cared for, educated and kept, subject to the control of and until discharged by the proper authorities of said institution, or until further orders of this court upon the proper adjustment of the differences of said parents.”
 

 About one month after such commitment, Minnie Fetter, the mother of such infant, filed an application for a writ of
 
 habeas corpus
 
 in the Court of Appeals for Marion’county, claiming that she was entitled to the custody of the child. That court granted the writ and ordered £ ‘ that said officers and agents of the children’s home deliver said child to Minnie Fetter * * *.”
 

 Upon review this court held that “a proceeding in
 
 habeas corpus
 
 by a parent against the institution or its officers for the custody of the child will not lie.”
 

 At page 127 it is said:
 

 “When it appeared to the Court of Appeals that the juvenile court had acquired jurisdiction of the child, and that it had become a ward of that court, it should have dismissed the application for a writ of
 
 habeas corpus.'1'1
 

 I can see no analogy with the instant case.
 

 Section 12161, General Code, provides:
 

 “A person unlawfully restrained of his liberty, or a person entitled to the custody of another, of which custody he is unlawfully deprived, may prosecute a writ of
 
 habeas corpus, to
 
 inquire into the cause of such imprisonment, restraint, or deprivation..”
 

 Section 12162, General Code, provides:
 

 “The writ of
 
 habeas corpus
 
 may be granted by the Supreme Court, the Court of Appeals, the Common Pleas Conrt, the Probate Court, or by a judge of either.”
 

 By virtue of the provisions of those sections, where a petition is filed in the. Court of Common Pleas in which it is alleged that petitioner is unlawfully de
 
 *98
 
 prived of his liberty, it is the duty of the court to issue the writ and inquire into the cause of such restraint.
 

 In the majority opinion it is conceded that the Court of Comon Pleas has jurisdiction to grant a writ of
 
 habeas corpus
 
 to a person unlawfully restrained of his liberty and then Section 12165, General Code, is quoted, as to when the writ shall not be allowed. That section can have no possible application to a situation where the petitioner has been adjudged an incompetent, idiot, imbecile or lunatic, and it is alleged in his application for the writ that he has been restored to reason.
 

 I have no quarrel with the proposition that in the instant case the appellee also had a remedy under Section 10507-61, General Code. I do not agree with the conclusion that that was her exclusive remedy. This court held to the contrary in the case of
 
 In re Remus,
 
 119 Ohio St., 166, 162 N. E., 740.
 

 In that case it appeared that Remus, in December 1927, had been acquitted by the verdict of a jury of murder, on the ground of insanity, and thereafter was committed by the Probate Court to the Lima State Hospital. On February 1, 1928, Remus filed an application for a writ of
 
 habeas corpus
 
 in the Court of Appeals of Allen county. He alleged that he was unlawfully restrained of his liberty by detention in the Lima State Hospital. A writ was granted and upon hearing the court found as a fact that Remus was then sane and ordered his discharge.
 

 This court upon review affirmed that judgment.
 

 Paragraphs 1, 2 and 4 of the syllabus read as follows :
 

 ‘ ‘ One who is acquitted of murder on the sole ground of insanity and who has been committed to the Lima State Hospital for the insane, is not deprived from thereafter seeking a writ of
 
 habeas corpus
 
 for the
 
 *99
 
 purpose of showing that he is sane and therefore unlawfully restrained of his liberty.
 

 “Section 1998, General Code (98 O. L., 240), authorizing the superintendent of such institution to discharge such inmate who ‘in his judgment’ is recovered, etc., does not preclude the inmate from applying to a court of competent jurisdiction for a determination of his sanity, — to a tribunal which is empowered to use its process, and to hear sworn testimony upon that issue.”
 

 “The fact that the Probate Court, pursuant to Section 13612, General Code, had previously ordered the commitment of the inmate to such hospital and error had been prosecuted from such order, constitutes no bar to a subsequent application for a writ of
 
 habeas corpus,
 
 where the sanity or insanity of the inmate at the later period may. be determined by the court.”
 

 Judge Jones, in writing for this court, beginning on page 173, uses this language which is pertinent here:
 

 “The question in the Probate Court (although counsel for petitioner claim there was none such) is, and must have been, whether the prisoner in December, 1927, was then sane; the issue before the Court of Appeals when it heard and entered its decree in March, 1928, was whether at that time the prisoner was sane or had been restored to sanity. While the presumption of his insanity in December may have continued, it did not necessarily follow except by way of presumption, that the inmate was also insane three months later when the Court of Appeals entered its decree; at least this was a question of fact to be determined by the Court of Appeals under the proper rules of evidence. A pending case could have no more vitality than an adjudicated case as a bar against future applications for the writ of
 
 habeas corpus-,
 
 and an adjudication of an inmate’s previous mental condition
 
 *100
 
 is no adjudication of his condition at a later period. It is established by overwhelming authority in this country, and elsewhere, that a previous adjudication of an inmate’s mental condition constitutes no bar to another and later application for release from custody by way of
 
 habeas corpus
 
 upon claim and proof of sanity at the time of his later application.
 
 People
 
 v.
 
 Brady,
 
 56 N. Y., 182;
 
 People, ex rel. Maglori,
 
 v.
 
 Siman,
 
 284 Ill., 28, 30, 119 N. E., 940;
 
 Coston
 
 v.
 
 Coston,
 
 25 Md., 500, 506;
 
 In re Snell, 31
 
 Minn., 110, 16 N. W., 692;
 
 People
 
 v.
 
 Lamb, supra.”
 

 On page 174 it is said:
 

 “The decisive question in this case was one of fact rather than of law.”
 

 In his concurring opinion in that case Judge Kinkade, at page 179, uses this language:
 

 “It requires a decree of some court to establish the fact of insanity and to place any individual in an insane asylum. We are not aware of any tendency on the part of the Legislature to weaken or change this safeguard thus thrown around the individual citizen who becomes incapable of taking care of himself. When the light of reason comes again, who shall say that he may not appeal to the courts if and when it becomes necessary to secure his liberty. Is there any better use that can be made of the time-honored and sacred writ of
 
 habeas corpus
 
 than to then employ it in liberating a sane person from an insane asylum ¶”
 

 That language applies with equal force to one adjudged to be an incompetent person.
 

 I fail to find any disagreement among the judges upon the question of jurisdiction. Chief Justice Marshall and Judges Day and Allen dissented. The first two wrote no opinions;. Judge Allen’s dissent was based upon the proposition that there was no proof that Remus had been restored to reason.
 

 
 *101
 
 In the majority opinion in the instant case this language is used:
 

 “After commitment the Probate Court had no continuing, exclusive jurisdiction of Remus. The statutes involved in the
 
 Remus case
 
 did not contemplate the return of the prisoner to the Probate Court for further examination and adjudication. Therein lies the distinction between the
 
 Remus case
 
 and the instant case.”
 

 Let us examine that statement.
 

 Section 10507-61, General Code, is the statute which the majority says provides the exclusive remedy here. Section 11010, General Code, was in-effect at the time the
 
 Remus case
 
 was decided.
 

 A comparison of those two sections will disclose that although in Section 10507-61, General Code, the phraseology has been somewhat changed, the substance is the same as in Section 11010, General Code.
 

 The Constitution of this state guaranteed to appellee that the privilege of the writ of
 
 habeas corpus
 
 shall not be suspended unless in cases of rebellion or invasion, the public safety requires it. Therefore she had the constitutional as well as the statutory right to prosecute in this court, in the Court of Appeals, in the Court of Common Pleas or the Probate Court, a writ of
 
 habeas corpus
 
 to inquire into and determine whether she was being unlawfully restrained of her liberty. She chose to apply to the Court of Common Pleas.
 

 The conclusion of the majority does suspend the privilege of the writ of
 
 habeas corpus
 
 so far as she is concerned.
 

 The judgment of the Court of Appeals should be affirmed.