YANKULOV *v.* BUSHONG, SUPT.

(No. 890—Decided October 24, 1945.)

*Mr. F. W. Durbin,* for petitioner.
*Mr. Hugh S. Jenkins,* attorney general, and *Mr. H. S. Zwolinski,* for respondent.

GUERNSEY, J. This is an action in *habeas corpus* brought in this court by Nellie Yankulov, on behalf of Steve Yankulov, her minor son.

In the petition it is alleged that Steve Yankulov has been confined in Lima State Hospital at Lima, Ohio,

since the 13th day of March 1945, and that he is sane and is being unlawfully restrained of his liberty by Dr. R. E. Bushong, superintendent of the hospital.

In his return to the writ of *habeas corpus* issued on the petition the respondent represents to the court that he has had Steve Yankulov in his custody since the date mentioned, by virtue of a commitment of the Common Pleas Court of Summit county to Lima State Hospital, as provided for in Section 13441-3, General Code, and attaches to the return the journal entry of the court prescribing the commitment, reading as follows, to wit:

"This day, to wit, the 6th day of March, A. D. 1945, came the prosecuting attorney, Alva J. Russell, by Robert Azar and Jackson Morris, assistant prosecuting attorneys, on behalf of the state of Ohio, the defendant being in court in custody of the sheriff, and accompanied by counsel, having heretofore, upon arraignment at the April Term 1944 of this court, to wit: On May 5, 1944, entered a plea of not guilty by virtue of insanity to the charge of murder in the first degree as contained in the indictment returned against him herein, and was remanded to the county jail to await trial.

"And thereafter, to wit: On the 26th day of February, 1945, the defendant appeared in court for trial, whereupon a jury was duly empaneled and sworn and the trial commenced, and not being completed, adjourned from day to day until the 6th day of March, 1945, at 11:20 a. m., at which time the jury, having heard the testimony adduced by both parties hereto, the arguments of counsel, and the charge of the court, retired to their room for deliberation. And thereafter on the same day, to wit: At 2:50 p. m. o'clock, said jury came again into court and returned their verdict, in writing, finding said defendant not guilty by reason of insanity.

"Thereupon, the court, being fully advised in the premises, hereby orders that the said defendant be taken hence by the sheriff to the Summit county jail, and that he be FORTHWITH conveyed to the Lima State Hospital for the Criminal Insane, at Lima, Ohio, there to be confined under the rules and regulations of said institution until he is restored to sanity."

The court finds from the evidence submitted on the trial of this cause:

Steve Yankulov was born on February 14, 1928, at Kenmore, Ohio.

The crime for which he was indicted was committed on April 7, 1944, during a holdup of a saloon in which he and certain other older boys were engaged. The shot resulting in the death upon which the murder charge was based was fired by one of his associates in the holdup but he was present with a gun participating in the holdup shortly prior to the firing of the fatal shot.

With the same associates he had participated in a holdup of the 13 Club the previous week.

At the time the crime for which he was indicted was committed he was approximately 16 years of age.

On May 5, 1944, Steve Yankulov entered a plea of not guilty by reason of insanity to the indictment and on September 1, 1944, pursuant to the provisions of Section 13441-4, General Code, was ordered committed to Lima State Hospital for Criminal Insane for observation as to his mental condition and was admitted to the hospital for that purpose on September 8, 1944.

On October 7, 1944, Dr. R. E. Bushong made the following report to the committing court:

"We have given Yankulov a mental, physical and psychological examination and we have further had him under daily observation. He has manifested no signs or symptoms of mental disorder but psycho-

logical testing reveals that he has an I. Q. of sixty-two and a mental age of exactly ten years. This indicates that he is mentally deficient and places him in the moron group. It is the opinion of our staff, however, that he has sufficient mentality to distinguish between right and wrong, and that he is responsible for his conduct.''

Thereafter Steve was returned to Summit county for trial on the first degree murder indictment against him. At the trial Dr. Bushong testified on the question of Steve's sanity to the same general effect as set forth in his report above mentioned.

The trial resulted in a verdict by the jury that Steve was not guilty by reason of insanity and he was then ordered committed to Lima State Hospital as set forth in the journal entry above mentioned.

At the trial of the instant case, on the question of the present sanity of Steve, Dr. Bushong testified to the same general effect that he testified to on the trial of the indictment.

He further testified that by reason of Steve's moronic condition of mind he would, if released, be easily influenced either for good or bad by his associates or environment, and if his associates or environment should happen to be bad his release might prove dangerous.

From Dr. Bushong's testimony and other evidence in the case the court finds that Steve at the present time has sufficient mental capacity to understand the nature, quality and consequences of his acts, and to know whether they are right or wrong, and has not, by reason of the duress of mental disease, so far lost the power to choose between the right and wrong and to avoid doing acts which are wrong, that his free agency is destroyed; and finds further that Steve is a moron and by reason of his moronic condition of

mind he would, if released from custody, be easily influenced either for good or bad by his associates or environment and if his associates or environment should happen to be bad his release might prove dangerous.

There is no statutory definition of insanity as a defense to an indictment or as a basis of commitment on acquittal on a plea of insanity, but it is established by court decisions that such insanity may be occasioned by idiocy, imbecility, lunacy, or any other defect, weakness or disease of the mind. *Clark* v. *State,* 12 Ohio, 483, at page 489, 40 Am. Dec., 481; *Blackburn* v. *State,* 23 Ohio St., 146; *People, ex rel. Thaw,* v. *Lamb,* 118 N. Y. Supp., 389.

Otherwise expressed, insanity, in criminal law, "is any defect, weakness, or disease of the mind rendering it incapable of entertaining, or preventing its entertaining in the particular instance, the criminal intent which constitutes one of the elements in every crime." 1 Bishop's Criminal Law (9 Ed.), 274, Section 381.

But no matter what is the condition of the mind of the accused he is not insane within the purview of the criminal law if, at the time of the commission of the alleged crime, he had sufficient mental capacity to understand the nature, quality and consequences of the particular act or acts constituting the crime, and to know whether they were right or wrong, and had not, by reason of the duress of mental disease, so far lost the power to choose between the right and wrong and to avoid doing the act or acts in question, that his free agency was at the time destroyed. *Clark* v. *State, supra,* at page 495; *Loeffner* v. *State,* 10 Ohio St., 598, at page 615; *Blackburn* v. *State, supra.*

The verdict of the jury in the trial of the indictment against Steve and the judgment of the court based thereon simply amounted to an adjudication that at

the time of the commission by him of the offense charged in the indictment and with reference to the offense Steve was insane because his mental capacity did not measure up to the standard above set forth.

From that adjudication there is both at common law and under the provisions of Section 13441-3, General Code, a presumption that such condition of insanity continues.

However, where the constitutional question of due process of law has been raised, it has been seriously questioned whether a commitment for insanity can properly be sustained in the absence of any provision for a finding as to the continuance of the insanity at the time of the trial. 1 L. R. A. (N. S.), 540, 544; *Underwood* v. *People,* 32 Mich., 1, 20 Am. Rep., 633.

That presumption is one of fact and, so far as it reflects on the question of the present sanity of the individual, may be rebutted and overcome by the evidence.

The journal entry ordering Steve's commitment prescribes that Steve be forthwith conveyed to Lima State Hospital for the Criminal Insane and "there to be confined under the rules and regulations of said institution until he is restored to sanity."

The only statutory provisions relating to such commitment are contained in Section 13441-3, General Code, which reads as follows:

"Sec. 13441-3. When a defendant pleads 'not guilty by reason of insanity,' and is acquitted on the sole ground of his insanity, such fact shall be found by the jury in its verdict, and it shall be presumed that such insanity continues. In such case the court shall forthwith direct that the accused be confined in the Lima State Hospital, and shall forthwith commit him to such hospital, and such person shall not be released from confinement in such hospital unless and until

the judge of the Court of Common Pleas of Allen county, Ohio, the superintendent of said Lima State Hospital and an alienist to be designated by said judge and said superintendent, or a majority of them, after notice and hearing, find and determine that said defendant's sanity has been restored, and that his release will not be dangerous; if said release be granted, it may be final, or on condition, or such person may be released on parole; and thereafter, in the discretion of said judge or superintendent may be returned to said hospital. Notice of such hearing shall be given to the prosecuting attorney of Allen county, also to the prosecuting attorney of the county from which said defendant was committed; nothing in this section contained shall be held or construed to deprive such person of his constitutional privilege to the writ of *habeas corpus.*''

It is contended by the respondent that in order to warrant Steve's release in this action it is necessary for the court, under the provision of the above-mentioned section of the General Code, to find and determine first that his sanity has been restored and second that his release will not be dangerous.

An inspection of the section reveals that it provides for a special proceeding in the Common Pleas Court of Allen county to secure the release of a person committed to Lima State Hospital pursuant to the provisions of the section, on acquittal on the sole ground of insanity, and expressly prescribes that nothing in the section contained shall be held or construed to deprive such person of the constitutional privilege to the writ of *habeas corpus.*

As the instant case is an action in *habeas corpus* it is governed by the rules applicable to *habeas corpus* and not by the rules applicable to such special proceeding.

Under the rules applicable to *habeas corpus* a person committed to a hospital as insane is entitled to be released from restraint upon establishing the fact that he is sane. *In re Remus,* 119 Ohio St., 166, 162 N. E., 740.

However, assuming that the provisions of the section are determinative of the duration of Steve's commitment, such provisions must be considered in connection with the nature and purpose of such commitment. The commitment is not in the nature of a penalty for a crime because the accused has been acquitted of the crime. It is predicated solely upon the adjudication of the insanity of the accused as hereinbefore defined, at the time of and with reference to the offense with which he was charged in the indictment, and upon the legal presumption that by reason of such insanity his being at large would be dangerous to himself and to others. Consequently the phrase "that his release will not be dangerous" as used in the section means that the accused's release will not be dangerous by reason of his present insanity.

Where an accused is found to be presently sane it follows as a matter of law that his release will not be dangerous within the meaning of the section.

While it is established that Steve Yankulov is a moron and therefore easily subject to influence, whether for good or bad, he is apparently no different than any other moron, and the mere fact that a person is a moron does not subject him to incarceration in a hospital for criminal insane persons.

The presumption of insanity arising from the adjudication is rebutted and overcome by the evidence showing that Steve Yankulov is now sane under the test of insanity prescribed by law in criminal cases.

For the reasons mentioned, the petition is granted and Steve Yankulov is ordered released from the custody of the respondent.

Costs are to be paid by the state of Ohio in the manner provided by law.

*Writ allowed.*

Middleton, P. J., and Jackson, J., concur.