18254.  BAILEY *v.* THE STATE.

Argued June 10, 1953—Decided September 16, 1953.

*John H. Hudson, J. Walter LeCraw, Carter Goode,* for plaintiff in error.

*Paul Webb, Solicitor-General, Carl B. Copeland, William E. Spence, Charlie O. Murphy, Eugene Cook, Attorney-General, Rubye G. Jackson,* contra.

Head, Justice.   John D. Bailey was indicted and convicted, without a recommendation of mercy, for the murder of Mary S. Bailey.   Under his general plea of not guilty, he introduced evidence that he was insane at the time of the homicide.   His motion for new trial as amended was overruled, and the exception is to that judgment.

In ground 4 of the motion for new trial as amended, it is contended that the evidence presented the defense that the defendant was insane or mentally incompetent under the law at the time of the homicide charged against him, and that it was prejudicial error, requiring the grant of a new trial, for the judge to omit from his charge an instruction based on the provisions of an act approved February 15, 1952 (Ga. L. 1952, pp. 205, 206).

Section 1 of the act of 1952 is as follows: "That from and after the passage and approval of this Act, in all criminal trials in any of the courts of this State wherein an accused shall contend that he was insane or mentally incompetent under the law at the time the act or acts charged against him were committed, the trial judge shall instruct the jury that, in case of acquittal on such

contention, the jury shall specify in their verdict that the accused was acquitted because of mental irresponsibility or insanity at the time of the commission of the act. If such a verdict of acquittal shall be returned by a jury in any case, it shall thereupon become the duty of the trial judge to retain jurisdiction of the prisoner and to order the prisoner to be confined in the State Hospital at Milledgeville, Georgia, or any other State Hospital, wherever the same may be located, where mental patients are kept, and to provide in said order that such person shall not be released from said hospital except upon compliance with the terms and provisions of Section 35-202 of the Code of Georgia of 1933, under which other mental patients are discharged."

Under the law of Georgia the defense of insanity at the time of an alleged criminal act must be made under the general plea of not guilty, and if the defense of insanity is satisfactorily proved, it would acquit the defendant of the charge against him. *Long* v. *State,* 38 *Ga.* 491, 509; *Danforth* v. *State,* 75 *Ga.* 614 (3) (58 Am. R. 480) ; *Carr* v. *State,* 96 *Ga.* 284 (22 S. E. 570) ; *Alford* v. *State,* 137 *Ga.* 458 (73 S. E. 375). The special plea of insanity provided by the Code, § 27-1502, must allege that the accused is insane at the time of trial, and the issue thus made must be tried by a special jury, and if found to be true, the court would order the defendant to be delivered to the Superintendent of the Milledgeville State Hospital. Code § 27-1502; *Long* v. *State,* supra; *Danforth* v. *State,* supra; *Fogarty* v. *State,* 80 *Ga.* 450 (5b) (5 S. E. 782).

Prior to the act of 1952 (Ga. L. 1952, pp. 205, 206), there was no provision in our law whereby a jury under the general plea of not guilty, and where insanity at the time of the alleged criminal act was satisfactorily proved, might return a verdict finding the accused insane at the time of the commission of the alleged criminal act. The act of 1952 was passed subsequently to the date of the commission of the alleged offense of the defendant (the date of the homicide being October 26, 1951); and it is insisted in the brief of the solicitor-general that to apply the act of 1952 to offenses which occurred before its passage would be in violation of express constitutional provisions prohibiting retroactive and ex post facto laws. The solicitor cites the Code, § 26-103, as follows: "All crimes shall be prosecuted and pun-

ished under the laws in force at the time of the commission thereof, notwithstanding the repeal of such laws before such trial takes place." It is further insisted in his brief that it was the intent of the legislature in passing the act of 1952 to take away the right of freedom from one who would have been accountable for his crime except for his insanity, and to substitute confinement; and that the substitution of confinement for freedom would amount to the subjection of the accused to a penalty for crime where none existed at the time of the commission of the act charged.

Our Constitution, article I, section III, paragraph II (Code, Ann., § 2-302), provides that no ex post facto law shall be passed. An ex post facto law relates to criminal cases only, and is a law that alters the situation of the accused to his disadvantage. *Boston & Gunby* v. *Cummins,* 16 *Ga.* 102, 106 (60 Am. D. 717) ; *Bussey* v. *Bishop,* 169 *Ga.* 251, 256 (150 S. E. 78) ; *Winston* v. *State,* 186 *Ga.* 573, 575 (198 S. E. 667) ; Carpenter *v.* Commonwealth of Pennsylvania, 58 U. S. 456, 462.

We cannot agree with the contention of able counsel for the State that the application of the act of 1952 to the trial of the defendant in the present case would subject him to a penalty for crime (if he could prove that he was insane at the time of the commission of the homicide) where none existed at the time of its commission.

The general rule in this country in regard to confinement in an institution of a person acquitted on the ground of insanity is stated in 44 C. J. S., 288, 289, § 131 (a), as follows: "Even when a defendant is acquitted by the verdict of a jury on the ground of insanity, the court may and should remand him to the custody of the sheriff or marshal on being satisfied that he is still insane and that it would be dangerous to permit him to be at large, unless some other provision for such cases is made by statute. The legislature may, within its constitutional limitations, and often does, authorize the commitment of such a person until he recovers sanity, if his discharge shall be deemed dangerous to the public peace or safety. An order committing a person to an asylum under such a statute is not a judgment or sentence on the verdict. He is not committed to a public institution by the state merely as parens patriae, but also by virtue of its po-

lice power. He is more than an insane ward of the state; the state is the possessor of him under its police power. . . A person confined to an asylum or a hospital for the insane, after his acquittal on the ground of insanity, is not to be considered as a criminal undergoing punishment; he is there solely to be cared for, protected, and guarded so that he may not injure another or himself, and he should be treated with such consideration and allowed such privileges as are not clearly incompatible with due discipline and with the hope that he may ultimately recover."

Confinement of an insane person in a state sanitarium for the insane is not punishment under the law, but is protection of the insane individual and of society. *Shea* v. *Gehan*, 70 *Ga. App.* 229, 230 (28 S. E. 2d 181). Prior to the enactment of the 1952 act, juries in this State frequently were confronted with cases where a brutal homicide had been committed, but where much evidence was introduced tending to show that the person accused of the crime was insane at the time of its commission. Such juries had the difficult choice of acquitting the accused, and thus sending free into society an insane person with proved homicidal tendencies, or sentencing a person, unaccountable under the law for his crimes, to death or life imprisonment. The act of 1952 corrects a deficiency in our laws which was pointed out by this court as early as 1885, in the *Danforth* case (75 *Ga.* 614, 624, 625), supra.

"Protection to person and property is the paramount duty of government." Constitution, article I, section I, paragraph II (Code, Ann., § 2-102). The State in the exercise of its police powers may make, repeal, alter, or modify laws for the protection of the public. *Bullard* v. *Holman*, 184 *Ga.* 788, 792 (193 S. E. 586, 113 A. L. R. 763).

In 14 Am. Jur. 809, § 55, and 14 R. C. L. 609, § 61, the following rule is stated: "A statute providing that a person acquitted of a criminal charge on the ground that he was insane when the offense was committed shall be committed to the asylum for the dangerous insane is not ex post facto as to a person tried and acquitted on that ground, after the statute was enacted for an offense committed before its passage." See also In re Slayback, 209 Cal. 480, 485 (288 Pac. 769), and cases cited.

In the brief filed on behalf of the Attorney-General it is stated:

"We agree that under the law the judge should have instructed the jury that if they found that the defendant committed the offense, but at the time he committed it he was insane, their verdict would be, 'We, the jury, find the defendant not guilty because of mental irresponsibility or insanity at the time of the commission of the act.'" It is contended, however, that, since the jury found the defendant sane, and guilty of murder without a recommendation of mercy, it was not harmful to the accused to fail to charge the principle of law relied upon by the defendant.

The act of 1952 directs that, after the passage and approval of the act, in *all* criminal trials wherein an accused shall contend that he was insane at the time the act charged against him was committed, the trial judge *shall* instruct the jury that, in case of an acquittal on such contention, the jury shall so specify in their verdict. The General Assembly used the imperative word "shall" in their direction to the trial judges. To avoid this clear and unequivocal mandate of the law under the theory that the defendant was not harmed by its denial, it would be necessary to speculate what verdict might have been rendered by the jury had the judge properly charged on an issue which was made by competent evidence in the case.

"Due process of law" requires that every defendant be tried under the rules which have been established for his protection. *Arthur* v. *State,* 146 *Ga.* 827 (92 S. E. 637). The jury in the trial of the defendant was given no instruction on the 1952 act, which, from the date of its approval by the Governor, became the prevailing law in this State in all cases where insanity at the time of an alleged criminal act is asserted under the plea of not guilty. This omission requires the grant of a new trial.

*Judgment reversed. All the Justices concur, except Almand, J., who dissents from the ruling in headnote 1 and the corresponding division of the opinion, and from the judgment of reversal, and Atkinson, P.J., not participating.*