318 So.2d 860 (1975)
Charles HOOKS
v.
Dr. W.L. JAQUITH, Director of Mississippi State Hospital, Whitfield, Mississippi.
No. 48778.
Supreme Court of Mississippi.
September 29, 1975.
Rehearing Denied October 13, 1975.
David Seth Michaels, Barry H. Powell, Jackson, Charles H. Ramberg, Brandon, for appellant.
*861 A.F. Summer, Atty. Gen., by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
Before GILLESPIE, SMITH and ROBERTSON, JJ.
SMITH, Justice.
Charles Hooks, a mental patient at Mississippi State Hospital at Whitfield, petitioned the Chancery Court of Rankin County, sitting as a Special Habeas Corpus Court, alleging that he was unlawfully deprived of his liberty in that his "leave" from the hospital had been terminated without a "hearing." The trial court denied relief and he appeals, equating the termination of his hospital leave with revocation of probation or parole in a criminal case.
There appears to be no contention that Hooks was not duly committed as a mental patient in civil proceedings nor that his present mental condition is such as to entitle him to be discharged as having regained his sanity.
The right to apply for the writ of habeas corpus and to a hearing in chancery court in cases where patients claim to be sane or to have been restored to sanity is specifically provided for by Mississippi Code Annotated section 41-21-15 (1972). However, as stated, no such claim is made here on behalf of Hooks.
Uncontradicted medical testimony is that Hooks is presently suffering from a mental condition described as schizophrenia, paranoid type and should be retained in the hospital for further treatment.
As part of the therapy employed in the treatment of certain mental patients, it is and has been for a long time, a hospital policy to grant them trial "leaves" in order (1) to allow the patient to be exposed to the stresses of everyday life and (2) to determine whether his condition has progressed to a point where he may be returned to, and take his place in, society. The granting of such leaves is a matter of considered medical judgment based entirely upon examination of the patient and evaluation of his mental condition by the medical experts. Not all these leaves are successful and a certain proportion return or are returned to the hospital for further treatment. In the other cases, a final discharge of the patient is entered automatically after a year. The testimony of the doctors is that, when a patient returns or is brought back, the decision as to whether to retain him for further treatment or not is based entirely upon medical examination and judgment as to his mental condition and his need for treatment, the same factors considered when the leave was originally ordered. The decision is not based upon the fact or charge that the patient has committed a criminal act or been guilty of some anti-social behavior while on leave. His mental condition and need of treatment are the criteria. The determination by the doctors that Hooks should be retained for treatment when he was returned was based on these factors only, and this decision was not affected or influenced by an alleged complaint as to his conduct. As a matter of fact, on his return Hooks was found to be "grossly psychotic" and in worse condition than when he left.
Obviously, this case is fundamentally different from those involving revocation of probation or parole. In the latter, revocation is based upon a finding that there has been a willful and knowing violation of a condition or conditions imposed upon one previously convicted of having violated the criminal law. These people, at least presumably, are sane and their acts are the result of their own volition. They are not persons suffering from a condition or disease which requires continuing medical treatment.
In the case of mental patients, even more than in the case of patients suffering from physical ailments, a decision as to whether to keep the patient in the hospital or to discharge him must remain a medical one, to be decided by medical experts, *862 based upon the mental condition of the patient and the necessity for hospital treatment, as determined by them.
This is not a case of confinement in a mental hospital of one who claims to be sane, nor is it one in which there has been no civil commitment of the patient. It is not a case, such as Brown v. Dr. W.L. Jaquith, etc.,[1] in which a defendant in a criminal case was committed as mentally incompetent to stand trial and, after an unreasonable time had elapsed, no civil proceedings for commitment had been instituted. It would be highly improper and disruptive to the treatment of these unfortunate people and to their real best interests for the courts to intrude into this highly specialized field in a case of this kind. We conclude that the trial court properly denied the writ and that the decree appealed from should be affirmed.
Affirmed.
RODGERS, P.J., and PATTERSON, INZER, SUGG, WALKER and BROOM, JJ., concur.
NOTES
[1] Miss., 318 So.2d 856, 1975.