WOLONSKY *v.* BALSON.

(No. 1-76-1—Decided March 17, 1976.)

*Mr. Richard E. Siferd,* for petitioner.
*Mr. William J. Brown,* attorney general, and *Mr. Allen
P. Adler,* for respondent.

*Per Curiam.* This case presents a single issue which
is factually simple but vitally important to both the peti-
tioner and society, *i. e.,* whether a person who has been
committed to Lima State Hospital under the provisions of
R. C. 2945.39, having been acquitted on the sole ground of
his insanity of a crime for which he had been indicted, who
was actively psychotic at the time of his commitment, who
by reason of the administration of psychotrophic drugs has
attained a state of complete remission from the symptoms
of his psychosis so that he now has the capacity either to
know the wrongfulness of his conduct or to conform his
conduct to the requirement of law (*State* v. *Staten* (1971),
25 Ohio St. 2d 107), but whose state of complete remission
will continue only so long as he continues under such medi-
cation, is entitled to be released on a petition for a writ of
*habeas corpus* from the custody of the superintendent of

such hospital as having had his sanity restored. Even more simply stated, the issue is whether a mental condition which has been achieved and may be maintained only by the administration of a course of medication can fulfill the definition of legal sanity set forth in the case of *State* v. *Staten, supra,* so as to entitle a person acquitted of crime on the sole ground of his insanity to be released pursuant to an action in *habeas corpus* from commitment to the Lima State Hospital under the provisions of R. C. 2945.39.

The facts on which this issue is based were testified to on cross-examination of a qualified psychiatrist employed by the Lima State Hospital and the evidence derived from this expert testimony is not disputed.

It has been uniformly held, at least since the case of *In re Remus* (1928), 119 Ohio St. 166, that a person so committed who is thereafter found to be ''sane'' is entitled to his freedom pursuant to a petition for a writ of *habeas corpus.* In a *habeas corpus* action the ultimate issue is not whether the petitioner may still be dangerous to himself or to society, whether he still is mentally deficient or mentally ill, but whether he is sane as defined by *State* v. *Staten, supra.* See *Yankulov* v. *Bushong* (1945), 80 Ohio App. 497 and *State, ex rel. Leeb,* v. *Wilson* (1971), 27 Ohio App. 2d 1. Such release has nothing to do with whether, for other reasons, the petitioner may be a likely candidate for other institutional commitment or care but relates wholly to whether there is legal authority for his continued commitment or care in the Lima State Hospital, a specialized institution where the authority for commitment and continued care is limited to those persons falling within specific statutory categories.

We have likewise held that if a patient so committed is qualified for release as being sane no valid authority exists under R. C. 2945.39 for the *habeas corpus* court to impose conditions upon such release. *Holderbaum* v. *Watkins* (1974), 44 Ohio App. 2d 253, affirmed 42 Ohio St. 2d 372. Adhering to this decision we could not, were we to release the petitioner, require as a condition of such release that

he continue the course of medication which has brought about his present mental condition and which is essential to the preservation of that condition, the psychiatrist having testified, without dispute, that the failure to continue such medication would result in the petitioner again becoming actively psychotic so as to constitute a danger to himself and to society.

We are intrigued by the seemingly parallel situations of the diabetic, the epileptic, the hypothyroid and others who must take a maintenance dose of medicine to preserve an optimum condition. These situations are not truly parallel, however, for except in the most unusual circumstances the failure of these people to voluntarily continue their medication can only result in harm to themselves and not result in harm to society. The primary reason which permits the segregation and commitment of psychotics is, however, the likelihood that their freedom will result in harm to society so a failure to voluntarily continue a necessary course of psychotropic medication brings about the very condition which justifies and requires institutional commitment.

In effect, a condition remains existing in the petitioner which according to expert psychiatric testimony not only may but actually will trigger active psychosis. The triggering mechanism is, of course, the discontinuance of medication. We are aware of no case where a person with such potential has been found to be sane in the legal sense so as to be qualified for release pursuant to a writ of *habeas corpus*. We recognize that every mental patient who has been released pursuant to a writ of *habeas corpus* has a potential for again becoming psychotic but when this potential substantially exceeds, as it does here, the potential of the average human being to become actively psychotic a distinction must exist.

R. C. 2945.39 contemplates release when a patient's "sanity has been restored." Webster's Third New International Dictionary defines "restore" as "to put back into an original state." In that sense an original state of sanity is not restored until the subject's potential for becoming

actively psychotic is not substantially greater than that of the average human being.

We conclude that where a person committed under R. C. 2945.39 has acquired the capacity either to know the wrongfulness of his conduct or to conform his conduct to the requirements of law only by reason of a course of medication and will lose such capacity should such course of medication not be continued such person's potential of becoming actively psychotic is substantially greater than the average human being and he has not been restored to sanity and is not sane in the sense required by either R. C. 2945.39 or by *In re Remus, supra,* for release pursuant to a petition for a writ of *habeas corpus.* Compare Judge (now Chief Justice) Burger's opinion in *Collins* v. *Cameron* (C. A. D. C. 1967), 377 F. 2d 945.

We recognize that this leaves in the Lima State Hospital a person who will there receive medication and while so medicated will lack some of the basic symptoms of the psychosis which brought about his commitment and not be actively psychotic. We recognize that in appropriate cases such persons might fare well in society and be no danger to society if their medication is continued under some sort of supervision. The legislature has already recognized the imposition in appropriate cases of conditions for administrative release by a tribunal composed of the "judge of the court of common pleas of Allen county, the superintendent of the Lima state hospital, an alienest to be designated by said judge and superintendent, or a majority of them." We commend to the legislature its consideration of the fairly recent impact on the field of mental illness of the use of psychotropic drugs. The effective use of such drugs did not exist at the time of the adoption of R. C. 2945.39 in basic concept. Such impact should be provided for, but is not a subject of action permitted to this court.

Accordingly, we must deny the release of the petitioner.

*Writ denied.*

Cole, P. J., Miller and Guernsey, JJ., concur.