393 So.2d 1351 (1981)
Willie James BETHANY
v.
James C. STUBBS, Director of Mississippi State Hospital, Whitfield, Mississippi.
No. 52332.
Supreme Court of Mississippi.
February 18, 1981.
Stella Terrell, McComb, for appellant.
*1352 James P. Brantley, Whitfield, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
LEE, Justice, for the Court:
Willie James Bethany filed a petition for writ of habeas corpus in the Chancery Court of the First Judicial District of Hinds County, Honorable Joe G. Moss, presiding, against James C. Stubbs, Director of the Mississippi State Hospital, Whitfield, Mississippi, seeking discharge from confinement in the hospital. After a full hearing, the chancellor dismissed the petition and Bethany has appealed here.
Appellant assigns five (5) errors in the trial below, but the issues presented are:
(1) Was the dismissal of the writ of habeas corpus petition a violation of the Fourteenth Amendment to the United States Constitution, Section 14, Miss.Const. 1890, and Mississippi Code Annotated Sections 41-21-61, et seq. (1972)?
(2) Was the lower court's action against the substantial weight of the evidence and did the lower court err in refusing to grant the prayer of the petition?
In 1973, appellant was arrested in Hinds County on a charge of murder. He was committed to Mississippi State Hospital by the Hinds County Circuit Court for examination and determination of his competency to stand trial on the charge. The staff at Mississippi State Hospital determined that appellant was mentally incompetent to stand trial and he was transferred to the Hinds County Chancery Court where, after a full hearing on March 19, 1975, he was committed by that court to the Mississippi State Hospital for an indefinite period of time.
On November 6, 1979, appellant filed a petition for writ of habeas corpus in the Chancery Court of the First Judicial District, Hinds County, seeking discharge from Mississippi State Hospital, contending that he was no longer dangerous to himself and others and that he could be treated effectively outside the hospital. He argues that continued confinement is in violation of his constitutional right to due process and violates Mississippi law governing commitment.
The petition was heard by the Chancery Court on December 6, 1979. Appellant introduced Dr. David Voit Myers, a clinical psychologist, who testified that appellant scored within normal range on the Minnesota Multi-phasic Personality Inventory (MMPI)[1] and that he could perform responsibly outside a hospital setting. The doctor's clinical diagnosis indicated that appellant was not psychotic at the time, that his profile did not suggest any bizarre behavior, that a clinical diagnosis indicated appellant had a schizophrenic reaction which was currently in remission and under control, and that "he's no longer psychotic but is mildly depressed and rather aloof." Dr. Myers stated that it is extremely difficult to give a correct psychiatric and psychological evaluation which accurately predicts dangerousness.
Appellee called as its chief witness Dr. Donald G. Guild, a psychiatrist and Director of the Forensic Section of the Mississippi State Hospital, where he had treated patients similar to appellant for in excess of five (5) years. He was appellant's personal physician and diagnosed him to be schizophrenic paranoid, currently in a tenuous remission. He explained that paranoid schizophrenia is a severe mental illness characterized by disorganization of thinking, paranoid ideas, hallucinations and delusions. His diagnosis was based on appellant's history of disorganized, psychotic, delusional behavior at the time of his admission to Mississippi State Hospital and upon his (Dr. Guild's) personal observation of appellant's behavior while at the hospital. Dr. Guild stated that during appellant's hospitalization, appellant had actually threatened *1353 to kill him and that in the event appellant was released from the hospital, he would be dangerous to himself and others. Further, he stated that he feared appellant, currently taking medication for his mental condition, would not take the medication after leaving the hospital. In such event, the likelihood of his becoming psychotic would increase greatly and perhaps produce another violent incident.

I.
Appellant first contends that he was denied his constitutional guarantee of due process and equal protection under the Fourteenth Amendment to the United States Constitution and Section 14, Miss. Const. 1890, which afford an individual due process in cases where he may suffer loss of life, liberty or property. He also claims a violation of Mississippi Code Annotated Sections 41-21-61, et seq. (1972) which relate to commitment procedure in mental cases.
The authority for judicial commitment to a mental hospital in Mississippi is found in Section 41-21-61(c) (Supp. 1980), as follows:
"(c) `Person in need of mental treatment,' when used in sections 41-21-61 to XX-XX-XXX, means any person afflicted with mental illness if that person, as a result of such mental illness, is reasonably expected at the time the determination is being made or within a reasonable time thereafter to intentionally or unintentionally physically injure himself or other persons, or is unable to care for himself so as to guard himself from physical injury, or to provide for his own physical needs. `Mental illness,' as employed in this definition, does not include mental retardation." (Emphasis added).
The above section provides for commitment where the individual is dangerous to himself or others. Due process is guaranteed under Mississippi Code Annotated Section 41-21-63 and Section 41-21-73 which require and provide for pre-commitment hearings before the chancery judge and for an attorney to represent the person during the hearing. Here, the original commitment and lack of due process stemming from same is not attacked. Appellant asserts in this proceeding that he is no longer in need of mental treatment within the definition of the above section and should be released. He further bases his release on an assertion that he is no longer dangerous to himself or others, as hereinafter discussed. However, this argument does not relate to the lack of due process, and we are of the opinion that such assignment is without merit.

II.
The real argument of appellant goes to the proposition that the lower court's decision is against the substantial weight of the evidence, particularly that (1) the court failed to apply appropriate legal standards required by the Constitution and law, supra, and should have granted the petition upon the facts, and (2) the lower court erred in determining that the appellant had the burden of proof in the hearing.
The courts have recognized that indefinite confinement in a mental institution constitutes a massive curtailment of liberty and the constitutional rights of the persons so committed must be jealously guarded. The patient's right to liberty may not be encroached upon by the police power to commit him unless the state's public interest for the protection of the mental patient, and society from crime, outweighs his right to liberty. Addington v. Texas, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).
It is recognized that a person may be mentally ill and not dangerous. Therefore, in order to commit such person to a mental institution, there must be a showing that the individual is dangerous to himself or society, and is unable to live safely (to himself or society) in freedom. In O'Conner v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975), the Court said:
"A finding of `mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement. *1354 Assuming that that term can be given a reasonably precise content and that the `mentally ill' can be identified with reasonable accuracy, there is still no constitutional basis for confining such persons involuntarily if they are dangerous to no one and can live safely in freedom.
* * * * * *
In short, a State cannot constitutionally confine without more a nondangerous individual who is capable of surviving safely in freedom by himself or with the help of willing and responsible family members or friends." 422 U.S. at 575, 576; 95 S.Ct. at 2493, 2494; 45 L.Ed.2d at 406, 407.
Appellant argues that even though he was incompetent and dangerous to himself and the public at the time of his original commitment, he is not dangerous presently and has not been dangerous for a reasonable time prior to the hearing. He further contends that the court should not have accepted opinion evidence from Dr. Guild relating to appellant's dangerous propensities but that the overall facts should have been presented and the court should have determined his condition upon those facts.
In Addington v. Texas, supra, in holding that a rigid standard of proof in commitment cases would be unfair due to the abstract nature of psychiatry and diagnosis, the Court said:
"The subtleties and nuances of psychiatric diagnosis render certainties virtually beyond reach in most situations. The reasonable-doubt standard of criminal law functions in its realm because there the standard is addressed to specific, knowable facts. Psychiatric diagnosis, in contrast, is to a large extent based on medical `impressions' drawn from subjective analysis and filtered through the experience of the diagnostician. The process often makes it very difficult for the expert physician to offer definite conclusions about any particular patient. Within the medical discipline, the traditional standard for `factfinding' is a `reasonable medical certainty.' If a trained psychiatrist has difficulty with the categorical `beyond a reasonable doubt' standard, the untrained lay juror  or indeed even a trained judge  who is required to rely upon expert opinion could be forced by the criminal law standard of proof to reject commitment for many patients desperately in need of institutionalized psychiatric care... . Such `freedom' for a mentally ill person would be purchased at a high price." 441 U.S. at 430, 99 S.Ct. at 1811, 60 L.Ed.2d at 333-334.
The Court also commented upon the right of the individual states to set procedural standards for commitment as follows:
"The essence of federalism is that states must be free to develop a variety of solutions to problems and not be forced into a common, uniform mold. As the substantive standards for civil commitment may vary from state to state, procedures must be allowed to vary so long as they meet the constitutional minimum. See Monahan & Wexler, A Definite Maybe: Proof and Probability in Civil Commitment, 2 Law & Human Behavior 37, 41-42 (1978); Share, the Standard of proof in Involuntary Civil Commitment Proceedings, 1977 Detroit College L.Rev. 209, 210. We conclude that it is unnecessary to require statessto apply the strict, criminal standard." 441 U.S. at 431, 99 S.Ct. at 1812, 60 L.Ed.2d at 334.
In stressing the role of qualified medical experts in determining mental competency, the Court said:
"There may be factual issues to resolve in a commitment proceeding, but the factual aspects represent only the beginning of the inquiry. Whether the individual is mentally ill and dangerous to either himself or others and is in need of confined therapy turns on the meaning of the facts which must be interpreted by expert psychiatrists and psychologists." 441 U.S. at 429, 99 S.Ct. at 1811, 60 L.Ed.2d at 333.
Prior to the decision in Addington, this Court addressed the question of weight of testimony by medical experts in commitment cases in Hooks v. Jaquith, 318 So.2d 860 (Miss. 1975), as follows:

*1355 "In the case of mental patients, even more than in the case of patients suffering from physical ailments, a decision as to whether to keep the patient in the hospital or to discharge him must remain a medical one, to be decided by medical experts, based upon the mental condition of the patient and the necessity for hospital treatment, as determined by them." 318 So.2d at 861-862.
The appellant lastly contends that the burden of proof in this case was upon the appellee to show that appellant was dangerous to himself and society. In Hill v. State of Florida, 358 So.2d 190 (Fla.App. 1978), involving the commitment of a mental patient, the Florida Court said:
"The equal protection clause, as interpreted by the United States Supreme Court, does not require that the state treat insanity acquitees and civil committees alike in allocating the burden of proof and fixing the standard of proof required on release petitions... . And Jackson v. Indiana [406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435] held that one accused of crime, whose incompetency prevents a trial, cannot be held indefinitely without compliance with civil standards and procedures. Those decisions do not lessen the distinction between an ordinary citizen, committed in civil proceedings for mental illness, and one who was duly committed after being relieved of criminal responsibility on account of mental illness. Society has a special interest in criminal acquitees... .
... But the burden of proof, in the sense of a risk of nonpersuasion, is on the acquitee. It is he who asserts that conditions have changed; it should be presumed, in the absence of countervailing evidence, that the condition which justified the original hospitalization order has continued, ... and there is general agreement that one who asserted his mental irresponsibility for a crime, winning hospitalization instead of jail or worse, should bear the burden of proving grounds for his release, ....
A preponderance of the evidence is the standard of proof normally applicable in civil matters, ... and is the degree of proof properly required for the release of insanity acquitees... . The duty to go forward with the evidence is another matter, ... the risk of nonpersuasion falls on the acquitee, and continued commitment is the result of a failure of proof that, if released, he would not be likely to injure others." 358 So.2d at 200-201.
39A C.J.S. Habeas Corpus § 204c, at 155 (1976) states as general law that a mental patient seeking relief by habeas corpus assumes the burden of proof that he has recovered his sanity and is no longer likely to cause harm to himself and others.
The evidence introduced by appellee in this case is substantially identical to that presented in O'Bannon v. Jaquith, 315 So.2d 918 (Miss. 1975), wherein a petitioner was refused discharge from the mental hospital on a showing that (1) he was paranoid schizophrenic, (2) he was in need of treatment, care and control, (3) had no insight into his illness and would not voluntarily take his medication if released, and (4) without medication, his condition would not improve.
We are of the opinion that the judgment of the lower court is supported by the evidence, that there were no reversible errors in the trial, and that the judgment of the lower court should be and is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.
NOTES
[1] The MMPI is a standard objective psychological battery containing 566 true-false items. Substantial clinical assessments are made by analysis of the item selections concerning emotional feelings, self-image, etc.