**The STATE of Utah, Plaintiff and Respondent,**

v.

**David Riley JACOB, Defendant and Appellant.**

**No. 18173.**

Supreme Court of Utah.

Aug. 26, 1983.

---

Linda E. Carter, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

OAKS, Justice:

This case concerns the continued confinement of a criminal defendant found not guilty by reason of insanity. Defendant appeals the court's refusal to release him

after the first annual recovery hearing prescribed by statute. U.C.A., 1953, § 77–14–5.

### I.

Defendant is 27 years of age. For ten years, he has suffered from paranoid schizophrenia. Because of this condition, he was discharged from the Air Force in 1971 and treated at various public and private institutions on numerous occasions since that time. In 1975, obsessed with the idea of evil around him, he made ineffectual attempts to commandeer a Strategic Air Command bomber to blow up the world. He later stole a shotgun and shells from a sporting goods store, fired a shot into the air, and then attempted to shoot approaching policemen. The gun jammed. He was charged with burglary, theft, and aggravated assault, and found not guilty by reason of insanity. The record is silent on whether that finding resulted in any confinement. His sexual obsessions have manifested themselves in various deviant behaviors including exhibitionism, transvestism, verbal abuse of women pedestrians, and one self-confessed (and apparently minor) attempted sexual assault. He has also been obsessed with the idea of what it would be like to "carve a woman's body off the bones and then put it on . . . ."

The five psychologists and psychiatrists who examined defendant and testified or submitted reports in this case all concluded that he has a tendency to react to his frustrations with potentially deadly force and, without the treatment discussed below, is very dangerous to himself and to those around him.

On the evening of September 21, 1979, the Salt Lake City Fire Department extinguished a fire in four rooms and a hall on the third floor of an apartment house near the University of Utah. When interviewed in the ensuing investigation, defendant stated that he had started the fire because he wanted to kill himself. He was charged with aggravated arson and confined in the county jail without posting bond for about three months. Then, by order of court (to avoid deterioration in his condition), he was confined in the Utah State Hospital.

Taking the case on stipulated facts (including reports on the findings of two psychiatrists who had examined defendant, and the parties' agreement that defendant "had an absolute defense" of insanity under U.C.A., 1953, § 76–2–305), the district court found defendant not guilty by reason of insanity. On May 6, 1980, the court appointed two experts to help the court determine "whether or not the defendant has fully recovered his sanity," as required by the statute then in force. § 77–24–15 (subsequently repealed). If recovered, defendant would be discharged from custody. If not, he would be committed to the Utah State Hospital. The court's order defined "sanity" for this purpose as whether defendant "is no longer a danger to himself or others." Pending that determination, defendant remained at the Utah State Hospital.

At the hearing on July 18, 1980, the court received written reports from two psychologists and oral testimony from Dr. Brech Lebegue, medical director of the forensic unit at the Utah State Hospital and director of forensic psychiatric services at the University of Utah Hospital. Defendant was present and represented by counsel. The facts were essentially undisputed: Defendant continued to suffer from paranoid schizophrenia, but with the appropriate dosage (which had now been identified) of neuroleptic drugs every two weeks his behavioral symptoms and hence his dangerousness to himself and others would be very unlikely to recur. However, experience with defendant (as with other schizophrenics) indicated that he could not be relied upon to continue to take his medication upon release from the hospital, and without that medication the dangerous symptoms would recur within a short time. (Hospital records showed ten occasions prior to the present confinement when defendant had voluntarily taken himself off medication when released from the hospital.)

Much of the hearing was a dialogue between the psychiatrist, the court, and coun-

sel on the meaning of recovery of "sanity" under the statute and whether the law would permit defendant to be released on condition that he take the prescribed medication. All parties' desire for a "middle ground" or a "less restrictive alternative" between compulsory confinement and absolute release was evident throughout, as was the fact that this case was being put forward as a test case to clarify how the law would be applied to medical advances in the ability to control the symptoms of schizophrenia but not to "cure" it.

The hearing was also complicated by the fact that, effective as of July 1, 1980, the operative standard had been amended from "sanity" to "whether the defendant has recovered from his mental illness." § 77–14–5. The parties took issue over which standard governed the disposition of this defendant.

On January 30, 1981, the court ordered that defendant be released from the custody of the Utah State Hospital upon the terms and conditions specified by its staff and under the supervision of Adult Parole and Probation "under the specific condition by this Court that he be maintained on antipsychotic medicine at a level which enables him to remain sane," failing which he would immediately be returned to the custody of the Utah State Hospital. Thereafter, both the hospital staff and Adult Parole and Probation declined to perform supervisory duties for defendant outside of the State Hospital because they believed they lacked statutory authority to do so. Finding this objection well taken, the court later vacated its order of conditional release as incapable of execution.

In July 1981, pursuant to a motion by defendant's counsel, the court held the annually available hearing on whether defendant had recovered sufficiently to be released. § 77–14–5(2) (renumbered in 1983 amendment as § 77–14–5(3)). Defendant told the court that he felt well when he was on medication. Two psychiatrists testified, each essentially confirming their joint written report to the court that the psychological manifestations of defendant's chronic paranoid schizophrenia "are in remission on medication" and that his condition "is the best it has been," but that his "underlying biochemical disorder" has not been cured. As a result, the doctors' report concludes, "we cannot certify to the Court that he has recovered from his mental illness."

The court's memorandum decision of August 7, 1981, contains this summary of the problem presented by this case (defendant's appeal is from this order):

The defendant suffers from a chronic mental illness which apparently has a biochemical cause and psychological and behavioral manifestations. He is not now, and will in all likelihood never be, recovered from the biochemical aspects of the disease. However, it appears that so long as he receives an appropriate maintenance dosage of medication, his psychological and behavioral manifestations disappear. Historically, he has on many occasions failed to maintain his medication level when not institutionalized, and he has consequently (and in every instance) become psychotic. In that condition, there is no question, based upon the historical information, that *he is extraordinarily dangerous to others and to himself.*

Under the circumstances just described, this court *cannot find that the defendant has recovered from his mental illness within the meaning of the Utah statutes,* and orders that the defendant continue to be maintained at the Utah State Hospital. Since there is no likelihood that a cure for defendant's illness will be discovered soon, the above ruling may well result in the lifetime institutionalization of an individual who could function adequately, and without danger, in the community, if his medication were carefully and closely supervised. However, no means of lawful supervision appears to exist at this time, and *some revision of existing law would seem to be required before the defendant in his present condition could be released.* [Emphasis supplied.]

## II.

This case poses the familiar problem of the application of old laws to new technology. The American Psychiatric Association Statement on the Insanity Defense (Dec. 1982) provides valuable background:

Modern psychiatric treatment, particularly the use of antipsychotic drugs, permits the seeming restoration of sanity for many defendants, even if it cannot be known with certainty whether such acquittees still remain dangerous.

... Once their release is approved by the court, it is almost always under the condition of participation in a mandatory, court-ordered outpatient program.

. . . .

... Unfortunately however, many jurisdictions have neither the trained personnel nor appropriate outpatient facilities and resources to provide for such close management of previously violent persons who are conditionally released. Where statutes provide for conditional release and judges allow it without these necessary resources, the public is subjected to great risk and the insanity acquittee is deprived of an opportunity for a necessary phase of treatment.

*Id.* at pp. 6, 16.

In the last few years, at least three other appellate courts have considered the question of whether a person committed for mental illness was entitled to release when his symptoms were being controlled by medication but his underlying illness remained. In each case, the evidence showed that the patient was not likely to take his medication voluntarily once he was released and that his dangerous condition would then return. In each case, the appellate court denied release, holding that under these circumstances the applicant continued to meet the "dangerous" standard for involuntary confinement. *Warren v. Harvey,* 632 F.2d 925 (2d Cir.), *cert. denied,* 449 U.S. 902, 101 S.Ct. 273, 66 L.Ed.2d 133 (1980) (criminal acquittee); *Clark v. State,* 151 Ga.App. 853, 261 S.E.2d 764 (1979), *aff'd,* 245 Ga. 629, 266 S.E.2d 466 (1980) (criminal acquittee); *Bethany v. Stubbs,* Miss., 393 So.2d 1351 (1981) (incompetent to stand trial); *O'Bannon v. Jaquith,* Miss., 315 So.2d 918 (1975) (civil commitment).

During this same decade, a variety of court decisions has applied doctrines of due process and equal protection to clarify constitutional constraints on state laws regulating the commitment and release of persons suffering from mental illness. *Jones v. United States,* —— U.S. ——, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983) (commitment; criminal acquittee); *Addington v. Texas,* 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (commitment; civil); *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (release; civil); *Jackson v. Indiana,* 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972) (release; incompetent to stand trial); *Rone v. Fireman,* 473 F.Supp. 92 (N.D.Ohio 1979) (treatment and release; civil). The rationale of some of the earlier of these decisions casts doubt on the legality of different standards of commitment and release in connection with civil and criminal proceedings, but the *Jones* case explicitly approves some differences as to persons found not guilty by reason of insanity. Utah's statutory law embodies such differences. *See generally* Comment, "Commitment Following an Insanity Acquittal," 94 *Harv.L.Rev.* 605 (1981).

■ Hospital authorities have considerable discretion to release a person who has been committed civilly when they find that his or her hospitalization is no longer desirable or that the conditions justifying involuntary hospitalization no longer exist. §§ 64–7–30, 64–7–42. Hospital authorities can even release an improved patient on condition that he receive outpatient or non-hospital treatment or on other reasonable conditions specified by them. § 64–7–43. *See also* §§ 64–7–30, 64–7–7.

■ These flexible options for treatment and release are specifically inapplicable to persons committed in connection with the administration of the criminal law. § 64–7–54; *Ollerton v. Diamenti,* Utah, 521 P.2d 899 (1974). As to criminal defendants found not guilty by reason of insanity, the

statute in effect at the time of this hearing specifically provided that they "shall not be released from confinement therein until the court which committed the defendant shall, after hearing, find that the defendant has recovered from his mental illness." § 77–14–5.[1] Thus, persons confined in the State Hospital as a result of criminal proceedings are not released on the same basis as persons committed civilly: outpatient treatment or conditional release is not available to them, and the releasing authority is the court rather than an official of the hospital. In terms of the specific issue in this case, we therefore agree with the district court and the responsible administrators that the statutory law in effect at the time of this hearing did not authorize conditional release of persons who have been found not guilty by reason of insanity.

### III.

Defendant raises three arguments for release. We rule on these and no others.

■ First, defendant contends that the district court's determination of the question of his release in terms of recovery from "mental illness" (the current law) rather than recovery of "sanity" (the standard applying at the time of the crime) was, in effect, a retroactive increase in punishment that violates the prohibition against an ex post facto law. Utah Const. art. I, § 18. This argument is meritless because the law in question does not increase punishment; it regulates procedures and treatment.

*Bailey v. State*, 210 Ga. 52, 77 S.E.2d 511 (1953); *Ex Parte Clark*, 86 Kan. 539, 121 P. 492 (1912). Even if the court had been in error in its standard, the error was harmless as to defendant because the evidence provided no basis for concluding that defendant had recovered and could be released under either standard.

■ Second, defendant urges error in the district court's determining his right to release in terms of a recovery that is tied to dangerousness to self or others. Instead, he advocates the determination of right to release in terms of the statutory formula on criminal responsibility: capacity to appreciate the wrongfulness of conduct or to conform conduct to the requirements of the law. § 76–2–305(1).[2] Defendant relies on *Wolonsky v. Balson*, 58 Ohio App.2d 25, 387 N.E.2d 625 (1976), which seems to apply this standard. But this argument confuses the question of accountability for a criminal act with the question of the appropriate disposition or treatment of a person who is excused from accountability. The standard prescribed in § 76–2–305(1) is limited to the question of accountability. In contrast, the direction to confine a defendant until he has recovered from the mental illness that was the basis for his acquittal of criminal charges is addressed to questions of treatment and protection. Though not then expressly prescribed in our statutes, the criteria that a person found not guilty by reason of insanity has not recovered from his mental illness when he is dangerous to himself or others is consistent with that direction

---

1. While this case was pending on appeal, the Legislature added the following provision as § 77–14–5(2), effective March 30, 1983:

   (2) After the hearing and upon consideration of the record, if the court finds by clear and convincing evidence that the defendant is still mentally ill and because of that mental illness presents a substantial danger to himself or others, the court shall order him committed to the Utah state hospital. The defendant shall not be released from confinement therein until the court which committed the defendant shall, after hearing, find that the defendant has recovered from his mental illness. Notice shall be given to the prosecuting attorney of the hearing. For purposes of this section, a person affected with a mental illness which is in remission as a result of

   medication or hospitalization shall remain committed to the Utah state hospital if it can be determined within reasonable medical probability that without continued medication or hospitalization the defendant's mental illness will reoccur thereby making the person a substantial danger to himself or others.

   Although the effect of the last sentence of this new statute will obviously be an issue in future hearings for the release of medicated defendants, it is not at issue in this appeal, and we express no opinion on it.

2. This standard of criminal responsibility was materially amended in 1983. § 76–2–305(1) (Supp.1983).

and serves the legislative purpose that motivated it.[3] We approve the district court's use of the dangerousness criteria and follow the Colorado Supreme Court in its holding that there is no constitutional violation in applying that standard to the question of whether to release a criminal defendant found not guilty by reason of insanity. *People v. Giles,* 192 Colo. 240, 557 P.2d 408 (1976).

■ Finally, defendant contends that in view of the testimony that his symptoms had been controlled by medication, his continued confinement amounts to forbidden criminal punishment on the basis of his status as a schizophrenic. He relies on *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), which forbids criminal punishment for the status of drug addiction. But *Robinson* expressly acknowledges the appropriateness of a state's using its health and general welfare powers for the compulsory confinement and treatment of persons suffering from mental illness. *Id.* at 666, 82 S.Ct. at 1420. Treatment, not punishment, is what is at issue in this case.

Having rejected each of the three bases on which the defendant contends that the district court erred in refusing to grant his release at this time, we affirm the judgment of the district court.

HALL, C.J., and HOWE, J., concur.

CORNABY, District Judge (concurring):

I concur in the opinion of Justice Oaks, with comments.

This Court should not accept the proposition that a patient must be hospitalized for life because state statutes fail to provide for a release conditioned on participation in a mandatory court-ordered out-patient program wherein the patient will receive the required medication and counseling on a regular basis. The problem should be referred by this Court to the Legislature. The court should review this case after allowing sufficient time for legislative action and implementation, say 1987.

STEWART, J., concurs in the concurring opinion of District Judge Cornaby.

DURHAM, J., having disqualified herself, does not participate herein; CORNABY, District Judge, sat.

---

**3.** By recent amendment, our statutory law now expressly embodies that criteria. *See* note 1

