STATE of Utah, Plaintiff and Respondent,

v.

Elma Lynn LINDQUIST, Defendant and Appellant.

No. 18396.

Supreme Court of Utah.

Nov. 18, 1983.

Robert J. Schumacher, Provo, for defendant and appellant.

David L. Wilkinson, Atty. Gen., J. Stephen Mikita, Asst. Atty., Salt Lake City, for plaintiff and respondent.

HALL, Chief Justice:

Defendant Elma Lynn Lindquist appeals from the decision of the district court continuing her commitment to the Utah State Hospital under the criminal commitment statute and also ordering her civil commitment. We affirm.

On October 9, 1979, the defendant shot her husband to death. Psychiatric evaluations showed that she believed Mr. Lindquist was the devil and should be killed. On May 3, 1980, in a bench trial, the defendant was found not guilty by reason of insanity. Under the applicable statute, U.C.A., § 77–24–15 (1978),[1] the court was then required to determine whether or not the defendant had "fully recovered [her] sanity."[2] The court remanded the defendant to the custody of the sheriff and appointed two psychiatrists to examine her, ordering that the tests to determine recovery be that of the civil commitment statute.[3] Four doctors[4] submitted reports that followed the elements of the standard for civil commitment. All stated that the defendant suffered from organic brain syndrome, had a mental illness as defined by

---

1. Subsequently repealed. The current statute is codified at U.C.A., 1953, § 77–14–5.

2. 77–24–15. Verdict of not guilty by reason of insanity—Procedure.—Upon a verdict of not guilty by reason of insanity being rendered by a jury, the court shall determine whether or not the defendant has fully recovered his sanity, and the defendant shall be remanded to the custody of the sheriff until his sanity shall have been finally determined in the manner prescribed by law. If the defendant is committed to a state hospital he shall not be released from confinement un-

less and until the court which committed him, or the district court of the county in which he is confined, shall, after notice and hearing, find and determine that his sanity has been restored.

3. U.C.A., 1953, § 64–7–36.

4. The two appointed by the court at the trial according to law and the two doctors who had examined Lindquist immediately subsequent to the homicide.

§ 64–7–28(1), and was committable under § 64–7–36.

The court formally committed the defendant on June 16, 1980, reciting that the commitment be under the statute which provides "that [her] sanity has been restored."[5] Neither the minute entry nor the transcript mentioned the applicable Code section number.

On September 17, 1981, in a personal letter to the judge, defendant requested a court hearing to determine whether she had recovered her sanity[6] and requested legal counsel to assist her. Counsel was appointed, and on November 10, 1981, the defendant applied for release under the terms of § 77–14–5(2) or, alternatively, for review under the standards of § 64–7–36. The defendant also attacked the constitutionality of § 77–14–5.

On December 29, 1981, an agreement was reached by the parties whereby the review of the defendant's commitment was to be under the standards of § 64–7–36; the judge so ordered. At the hearing on January 15, 1982, the parties stipulated that the substantive and procedural requirements of § 64–7–36 had been met.

The substance of the report submitted to the court and the testimony at the hearing by the psychiatrists who examined the defendant was that her organic brain syndrome was in remission due to medication and would remain so if medication was continued. They also testified that the defendant currently suffered from depression and dependent personality disorder. The manifestation of these illnesses suggested that defendant would cease taking her medication if released unsupervised and would revert to the use of the substances[7] that triggered the organic brain syndrome, thus becoming a danger to herself and others. Both doctors said that since there was no out-patient facility in this state that had the authority to supervise continuing mental health treatment to the defendant, the least restrictive alternative was to continue her commitment to the state mental hospital.

Based on this testimony, the court ruled that the defendant had not recovered from her mental illness and her criminal commitment under § 77–14–5 could therefore not be terminated. He also ruled that the defendant was committable under the standards of § 64–7–36 and ordered her commitment as a civil involuntary mental health patient. He declined to rule on the constitutionality of § 77–14–5. Defendant appeals from this dual commitment and requests that the criminal commitment be vacated, leaving the civil commitment in place.

I

■ Defendant's first contention is that the criminal commitment statute[8] requiring that a committed person be "recovered from his mental illness" in order to be released from confinement is unconstitutionally vague. Defendant points out that there is neither a definition of "recovery" nor any criteria to determine what is meant by "recovery" anywhere in the criminal statutes. There is no doubt that a statute that affects fundamental liberties is unconstitutional if it is so vague that persons of common intelligence must necessarily guess at its meaning.[9] However, facial imprecision in statutory terms is not necessarily a

---

5. Only the criminal commitment statute has similar language.

6. The applicable statute at the time of this request was U.C.A., 1953, § 77–14–5(2), effective July 1, 1981. Subsection (2) reads in pertinent part:

> A defendant committed to the Utah state hospital pursuant to subsection (1) [the initial commitment following a verdict of not guilty by reason of mental illness] may apply, not sooner than six months from the date of the commitment, to the district court of the county from which he was committed, for an order of release on the grounds that he has recovered from his mental illness. . . . [T]he burden of proof is on the applicant.

7. Primarily drugs and alcohol.

8. U.C.A., 1953, § 77–14–5(2).

9. *In re Boyer,* Utah, 636 P.2d 1085 (1981).

reason to hold a statute unconstitutional.[10] Further, it is the duty of this Court to construe a statute to avoid constitutional infirmities whenever possible.[11] We must "adopt that construction which will save the statute from constitutional infirmity (citation omitted)." [12]

The term "recovered from . . . mental illness" is relatively precise. It lends itself to an interpretation that effectuates the statutory purpose without violating constitutional standards.

■ The legislative directive that a person found to be not guilty by reason of insanity be confined until he has recovered from the mental illness that resulted in his acquittal of criminal charges has as its purpose the treatment and protection of the person committed, as well as the protection of the public at large. The criterion that the court applied in this case—that the person committed has not recovered from his mental illness if he is a danger to himself or others [13]—is consistent with that legislative directive and the purpose that motivated it.[14] In fact, this Court has expressly approved the use of the dangerousness standard in criminal commitment cases and has found that there is no constitutional violation in the use of that standard.[15]

■ The question here, of course, is not whether the dangerousness criterion itself is constitutional, but whether, absent an express directive in the statute, use of that standard to define "recovery from . . . mental illness" allows so much discretion in the court that questions of arbitrariness are raised.[16] We conclude that it does not.

We therefore hold that under § 77–14–5(2), as it read at the time of the release hearing, "recovery from . . . mental illness" is not so vague that a person of common intelligence could not determine its meaning in light of the statutory purpose.

## II

Defendant next contends that dual commitment violates her fundamental due process rights and would have this Court vacate the criminal commitment and leave in place the civil commitment. She argues that the dual commitment is not the least restrictive alternative method of treatment and that it does not "bear some reasonable relation to the purpose for which the individual is committed." [17] We do not agree.

Most courts that have discussed the principle of the least restrictive alternative method of treatment have done so in the context of civil commitments.[18] However,

**10.** *Id.* at 1088. *See also Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

**11.** *Supra* n. 9, at 1088.

**12.** *Supra* n. 9, at 1089. *See also United States v. Delaware & Hudson Co.,* 213 U.S. 366, 29 S.Ct. 527, 53 L.Ed. 836 (1909).

**13.** While this case was pending on appeal, the legislature added this standard in amending § 77–14–5(2), effective March 30, 1983. Subsection 77–14–5(2) now reads in pertinent part:
　(2) After the hearing and upon consideration of the record, if the court finds by clear and convincing evidence that the defendant is still mentally ill and because of that mental illness presents a substantial danger to himself or others, the court shall order him committed to the Utah state hospital. The defendant shall not be released from confinement therein until the court which comitted [sic] the defendant shall, after hearing, find that the defendant has recovered from his mental illness.

**14.** *State v. Jacob,* 669 P.2d 865 (1983).

**15.** *Id.* at 870.

**16.** In *Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 2299, 33 L.Ed.2d 222 (1972), the United States Supreme Court said:
　[I]f arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

**17.** *Jackson v. Indiana,* 406 U.S. 715, 738, 92 S.Ct. 1845, 1858, 32 L.Ed.2d 435 (1972).

**18.** *See, e.g., Covington v. Harris,* 419 F.2d 617 (D.C.Cir.1969); *Welsch v. Likins,* 373 F.Supp. 487 (D.Minn.1974); *Wyatt v. Stickney,* 325 F.Supp. 781 (M.D.Ala.1971).

the Court of Appeals for the District of Columbia has applied it to commitments of persons who have been found not guilty by reason of insanity.[19] In so doing, the court has said: "It is clear that one who by reason of insanity is acquitted of crime and . . . is committed to a mental hospital is entitled not only to treatment but to treatment in 'the least restrictive alternative consistent with the legitimate purposes of a commitment (citation omitted).' "[20]

■ First of all, there is no question that commitment of one found not guilty by reason of insanity, until she has recovered her sanity, does bear a reasonable relationship to the purpose for which she has been committed: treatment and protection of the person committed and protection of the public at large. Dual commitment does not change that relationship.

■ Secondly, the defendant's dual commitment is not overly restrictive. The trial judge reviewing the criminal commitment could not grant the release of a person found not guilty by reason of insanity unless the burden imposed by the statute has been met. U.C.A., 1953, § 77–14–5(2) says that one so committed cannot be released unless it is shown that she has recovered her sanity. The court below defined "recovery" as whether the person committed remains a danger to herself and others. The defendant here has failed to carry that burden. Failing that, the court properly declined release under the criminal statute.

However, after denying release under the criminal statute the lower court also committed defendant civilly.[21] While we nei-

ther suggest nor encourage dual commitments, and while we are aware of no precedent therefor, it does not appear that defendant has been unduly restricted in this case by dual commitment. In fact, the civil commitment is superfluous. If the defendant can meet her burden under the criminal commitment statute, she is automatically entitled to release under the civil commitment statute.

In the civil commitment statute, the burden of proof is on the State to prove that the person committed constitutes a danger to herself or others and should not be released. If the defendant has carried her burden in the criminal release procedure, the civil commitment statute provides no barrier to release. Further, a person committed as a civil involuntary mental health patient can be released on the basis of a decision of the hospital staff alone, while a person committed criminally can be released only after approval by the court.[22] Again, the civil statute provides no barrier.

■ It is to be observed that having been dually committed, defendant is entitled to the full procedural protections inherent in both commitment statutes, including the hearing requirements of both. While this Court considers the dual commitment unnecessary and superfluous, albeit constitutional, if the State chooses to impose and support such a commitment it must also comply with the strictures of both statutes and provide the defendant with all the hearings and commitment review she is entitled to under each.

---

**19.** *United States v. Ecker,* 543 F.2d 178 (D.C. Cir.1976), *cert. denied,* 429 U.S. 1063, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977); *Ashe v. Robinson,* 450 F.2d 681 (D.C.Cir.1971).

**20.** *Ashe, supra* n. 19, at 683.

**21.** It is clear that the procedural requirements for civil commitments were met and that defendant was civilly commitable. In addition, the parties stipulated that the procedural requirements had been met.

**22.** It is important to note that, under U.C.A., 1953, § 64–7–43, a civil involuntary mental health patient can be conditionally released

(*e.g.,* to outpatient treatment) if the director of the confining mental health facility finds that the conditions requiring strict confinement of the patient no longer exist. The conditionally released patient must agree in writing to the conditions and must strictly adhere to them or face recommitment to a restrictive environment.

There is no provision for a similar conditional release to outpatient or other less restrictive treatment for improved mental health patients who have been criminally committed.

## III

Defendant's final contention is that dual commitment denies her equal protection of the laws. Specifically, she contends that the standards of review for release should be the same for both involuntary civil and criminal commitments and that placing the burden of proof on the person committed in criminal release proceedings denies her equal protection.

 The United States Supreme Court, in *Jones v. United States,*[23] has definitively spoken to the issue of whether it is proper to treat insanity acquittees and persons committed civilly differently. The Court there said:

> [W]hen a criminal defendant establishes ... that he is not guilty of a crime by reason of insanity, the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society. *This holding accords with the widely and reasonably held view that insanity acquittees*

*constitute a special class that should be treated differently from other candidates for commitment.*[24]

(Emphasis added.) That Court thus has concluded that it is constitutionally permissible to differentiate in treatment of insanity acquittees and persons committed civilly.

Further, it has consistently been held that putting the burden on insanity acquittees in release proceedings does not violate constitutional principles.[25]

Therefore, the defendant's equal protection argument also fails.

The judgment of the trial court is affirmed.

STEWART, OAKS, HOWE and DUR-HAM, JJ., concur.

---

23. —— U.S. ——, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983).

24. *Id.* 103 S.Ct. at 3052–53.

25. *See, e.g., Dorsey v. Solomon,* 604 F.2d 271 (4th Cir.1979); *Allen v. Radack,* 426 F.Supp. 1052 (D.S.D.1977); *People v. Chavez,* Colo., 629 P.2d 1040 (1981).